UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


LARRY G. JOSSEY, JR.,

        Petitioner,

vs.                           Case No. 3:18-cv-464-J-39JBT

SECRETARY, FLORIDA DEPARTMENT
OF CORRECTIONS, et al.,

        Respondents.

_____

**ORDER**

**I.   INTRODUCTION**

Larry G. Jossey, Jr., a petitioner proceeding pro se, challenges his state court (Duval County) conviction for armed robbery through a Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus By a Person in State Custody (Petition) (Doc. 1). He raises eight grounds seeking post-conviction relief. Respondents filed an Answer to Petition for Writ of Habeas Corpus (Response) (Doc. 19).[1] Petitioner filed a notice that he does not intend to file a reply (Doc. 22). See Order (Doc. 8).

---

[1] The Court will reference the page number assigned by the electronic filing system with respect to all documents and exhibits.

## II.  EVIDENTIARY HEARING

Petitioner carries the burden to establish a need for an evidentiary hearing.  See Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011) (opining a petitioner bears the burden of establishing the need for an evidentiary hearing with more than speculative and inconcrete claims of need), cert. denied, 565 U.S. 1120 (2012).  Petitioner has not met this burden. The Court finds it can "adequately assess [Petitioner's] claims without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert. denied, 541 U.S. 1034 (2004). Thus, Petitioner is not entitled to an evidentiary hearing. Schriro v. Landrigan, 550 U.S. 465, 474 (2007).

## III.  THE PETITION

The Petition is timely filed.  Response at 6.  Respondents contend ground one is unexhausted and procedurally barred.  Id. at 18-19.

## IV.  HABEAS REVIEW

Through his Petition, Petitioner claims he is detained "in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  The Court recognizes its authority to award habeas corpus relief to state prisoners "is limited-by both statute and Supreme Court precedent." Knight v. Fla. Dep't of Corr., 936 F.3d 1322, 1330 (11th Cir. 2019), petition

for cert. filed, (U.S. Apr. 20, 2019) (No. 19-8341).  The AEDPA
governs a state prisoner's federal petition for habeas corpus and
"prescribes a deferential framework for evaluating issues
previously decided in state court[,]" Sealey v. Warden, Ga.
Diagnostic Prison, 954 F.3d 1338, 1354 (11th Cir. 2020) (citation
omitted), limiting a federal court's authority to award habeas
relief.  See 28 U.S.C. § 2254; Shoop v. Hill, 139 S. Ct. 504, 506
(2019) (per curiam) (recognizing AEDPA imposes "important
limitations on the power of federal courts to overturn the
judgments of state courts in criminal cases").  As such, federal
courts may not grant habeas relief unless one of the claims:
"(1)'was contrary to, or involved an unreasonable application of,
clearly established Federal law, as determined by the Supreme Court
of the United States,' or (2) 'was based on an unreasonable
determination of the facts in light of the evidence presented in
the State court proceeding.' 28 U.S.C. § 2254(d)."  Nance v.
Warden, Ga. Diagnostic Prison, 922 F.3d 1298, 1300-1301 (11th Cir.
2019), cert. denied, No. 19-6918, 2020 WL 1325907 (U.S. Mar. 23,
2020).

        In Knight, the Eleventh Circuit explained:

            A decision is "contrary to" clearly
        established federal law "if the state court
        arrives at a conclusion opposite to that
        reached by [the Supreme] Court on a question
        of law or if the state court decides a case
        differently than [the Supreme] Court has on a

> set of materially indistinguishable facts." <u>Williams</u> [v. Taylor, 529 U.S. 362 (2000)] at 413, 120 S. Ct. 1495. A state court decision involves an unreasonable application of federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." <u>Id</u>. To justify issuance of the writ under the "unreasonable application" clause, the state court's application of Supreme Court precedent must be more than just wrong in the eyes of the federal court; it "must be 'objectively unreasonable.'" <u>Virginia v. LeBlanc</u>, --- U.S. ----, 137 S. Ct. 1726, 1728, 198 L.Ed.2d 186 (2017)(quoting <u>Woods v. Donald</u>, --- U.S. ---, 135 S. Ct. 1372, 1376, 191 L.Ed.2d 464 (2015)); <u>see also</u> <u>Bell v. Cone</u>, 535 U.S. 685, 694, 122 S. Ct. 1843, 152 L.Ed.2d 914 (2002) (explaining that "an unreasonable application is different from an incorrect one.").

<u>Knight</u>, 936 F.3d at 1330-31.

To obtain habeas relief, the state court decision must unquestionably conflict with Supreme Court precedent, not dicta. <u>Harrington v. Richter</u>, 562 U.S. 86, 102 (2011). If some fair-minded jurists could agree with the lower court's decision, habeas relief must be denied. <u>Meders v. Warden, Ga. Diagnostic Prison</u>, 911 F.3d 1335, 1351 (11th Cir.), <u>cert. denied</u>, 140 S. Ct. 394 (2019). Therefore, unless the petitioner shows the state-court's ruling was so lacking in justification that there was error well understood and comprehended in existing law beyond any possibility

for fair-minded disagreement, there is no entitlement to habeas relief. Burt v. Titlow, 571 U.S. 12, 19-20 (2013).

This Court must accept that a state court's finding of fact, whether a state trial court or appellate court, is entitled to a presumption of correctness under 28 U.S.C. § 2254(e)(1). "The state court's factual determinations are presumed correct, absent clear and convincing evidence to the contrary." Sealey, 954 F.3d at 1354 (quoting 28 U.S.C. § 2254(e)(1)). This presumption of correctness, however, applies only to findings of fact, not mixed determinations of law and fact. Brannan v. GDCP Warden, 541 F. App'x 901, 903-904 (11th Cir. 2013) (per curiam) (recognizing the distinction between a pure question of fact from a mixed question of law and fact), cert. denied, 573 U.S. 906 (2014). Where there has been one reasoned state court judgment rejecting a federal claim followed by an unexplained order upholding that judgement, federal habeas courts employ a "look through" presumption: "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning." Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018) (Wilson).

Thus, the reviewing federal court's habeas corpus consideration of a petition under AEDPA is a guard against extreme

malfunctions in the state criminal justice systems, not a mechanism for ordinary error correction.  Richter, 562 U.S. at 102-103 (citation and quotation marks omitted).  As noted in Sealey, 954 F.3d at 1354 (citations omitted), when reviewing whether there has been an unreasonable application of federal law, "[t]he key word is 'unreasonable,' which is more than simply incorrect." Consequently, state-court judgments will not easily be set aside due to the applicability of the highly deferential AEDPA standard that is intentionally difficult to meet.  See Richter, 562 U.S. at 102.  Although a high hurdle, this high standard does not impose a complete bar to issuing a writ, but it severely limits those occasions to those "where there is no possibility fairminded jurists could disagree that the state court's decision conflicts" with Supreme Court precedent.  Id.

## V.   EXHAUSTION AND PROCEDURAL DEFAULT

The doctrine of procedural default requires the following:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. See,

> e.g., <u>Coleman</u>,[2] <u>supra</u>, at 747-748, 111 S.
> Ct. 2546; <u>Sykes</u>,[3] <u>supra</u>, at 84-85, 97 S. Ct.
> 2497. **A state court's invocation of a**
> **procedural rule to deny a prisoner's claims**
> **precludes federal review of the claims if,**
> **among other requisites, the state procedural**
> **rule is a nonfederal ground adequate to**
> **support the judgment and the rule is firmly**
> **established and consistently followed.** <u>See</u>,
> e.g., <u>Walker v. Martin</u>, 562 U.S. ----, ----,
> 131 S. Ct. 1120, 1127-1128, 179 L.Ed.2d 62
> (2011); <u>Beard v. Kindler</u>, 558 U.S.----, ----,
> 130 S. Ct. 612, 617-618, 175 L.Ed.2d 417
> (2009). The doctrine barring procedurally
> defaulted claims from being heard is not
> without exceptions. A prisoner may obtain
> federal review of a defaulted claim by showing
> cause for the default and prejudice from a
> violation of federal law. <u>See</u> <u>Coleman</u>, 501
> U.S., at 750, 111 S. Ct. 2546.

<u>Martinez v. Ryan</u>, 566 U.S. 1, 9-10 (2012) (emphasis added).

A petition for writ of habeas corpus should not be entertained unless the petitioner has first exhausted his state court remedies. <u>Castille v. Peoples</u>, 489 U.S. 346, 349 (1989); <u>Rose v. Lundy</u>, 455 U.S. 509 (1982). A procedural default arises "when 'the petitioner fails to raise the [federal] claim in state court and it is clear from state law that any future attempts at exhaustion would be futile.'" <u>Owen v. Sec'y, Dep't of Corr.</u>, 568 F.3d 894, 908 n.9 (11th Cir. 2009) (quoting <u>Zeigler v. Crosby</u>, 345 F.3d 1300, 1304 (11th Cir. 2003)), <u>cert. denied</u>, 558 U.S. 1151 (2010).

---

2 <u>Coleman v. Thompson</u>, 501 U.S. 722 (1991).

3 <u>Wainwright v. Sykes</u>, 433 U.S. 72 (1977).

There are, however, allowable exceptions to the procedural default doctrine; "[a] prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law." Martinez, 566 U.S. at 10 (citing Coleman, 501 U.S. at 750).  To demonstrate cause, a petitioner must show some objective factor external to the defense impeded his effort to properly raise the claim in state court. Wright v. Hopper, 169 F.3d 695, 703 (11th Cir.), cert. denied, 528 U.S. 934 (1999).  If cause is established, a petitioner must demonstrate prejudice.  To demonstrate prejudice, a petitioner must show "there is at least a reasonable probability that the result of the proceeding would have been different had the constitutional violation not occurred." Owen, 568 F.3d at 908.

Alternatively, a petitioner may obtain review of a procedurally barred claim if he satisfies the actual innocence "gateway" established in Schlup v. Delo, 513 U.S. 298 (1995).  The gateway exception is meant to prevent a constitutional error at trial from causing a miscarriage of justice and conviction of the actually innocent.  Kuenzel v. Comm'r, Ala. Dep't of Corr., 690 F.3d 1311, 1314 (11th Cir. 2012) (per curiam) (quoting Schlup, 513 U.S. at 324), cert. denied, 569 U.S. 1004 (2013).

## VI.   INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

Petitioner raises several claims of ineffective assistance of trial counsel.  To prevail on a Sixth Amendment claim, he must satisfy the two-pronged test set forth in Strickland v. Washington, 466 U.S. 668, 688 (1984), requiring that he show both deficient performance (counsel's representation fell below an objective standard of reasonableness) and prejudice (there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different).  See Brewster v. Hetzel, 913 F.3d 1042, 1051-52 (11th Cir. 2019) (reviewing court may begin with either component).

In order to obtain habeas relief, a counsel's errors must be so great that they adversely affect the defense.  In order to satisfy this prejudice prong, the reasonable probability of a different result must be "a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

The standard created by Strickland is a highly deferential standard, requiring a most deferential review of counsel's decisions.  Richter, 562 U.S. at 105.  Not only is there the "Strickland mandated one layer of deference to the decisions of trial counsel[,]" there is the added layer of deference required by AEDPA: the one to a state court's decision.  Nance, 922 F.3d at 1303.  Thus,

9

> Given the double deference due, it is a "rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding." Johnson v. Sec'y, DOC, 643 F.3d 907, 911 (11th Cir. 2011). And, for the reasons we have already discussed, it is rarer still for merit to be found in a claim that challenges a strategic decision of counsel.

Nance, 922 F.3d at 1303.

## VII.  THE GROUNDS

**GROUND ONE:  The principal instruction was fundamentally erroneous in violation of the Sixth and Fourteenth Amendments.**

Petitioner asserts he exhausted this ground on direct appeal. Petition at 6.  The record demonstrates that in Issue I of the direct appeal brief, Petitioner alleged the principal instruction was fundamentally erroneous.  (Doc. 19-3 at 266-270, 347-350). Upon review, although Petitioner claimed fundamental error in the jury instructions, he did not raise a claim of constitutional deprivation under the Sixth or Fourteenth Amendments of the United States Constitution in the state court.  Id.

In addressing the question of exhaustion, the district court must ask whether the claim was raised in the state court proceedings and whether the state court was alerted to the federal nature of the claim:

> Before seeking § 2254 habeas relief in federal court, a petitioner must exhaust all state

10

court remedies available for challenging his conviction. See 28 U.S.C. § 2254(b), (c). For a federal claim to be exhausted, the petitioner must have "fairly presented [it] to the state courts." McNair v. Campbell, 416 F.3d 1291, 1302 (11th Cir. 2005). The Supreme Court has suggested that a litigant could do so by including in his claim before the state appellate court "the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" Baldwin v. Reese, 541 U.S. 27, 32, 124 S. Ct. 1347, 158 L.Ed.2d 64 (2004). The Court's guidance in Baldwin "must be applied with common sense and in light of the purpose underlying the exhaustion requirement"-namely, giving the state courts "a meaningful opportunity" to address the federal claim. McNair, 416 F.3d at 1302. Thus, a petitioner could not satisfy the exhaustion requirement merely by presenting the state court with "all the facts necessary to support the claim," or by making a "somewhat similar state law claim." Kelley,[4] 377 F.3d at 134-44. Rather, he must make his claims in a manner that provides the state courts with "the opportunity to apply controlling legal principles to the facts bearing upon (his) [federal] constitutional claim." Id. at 1344 (quotation omitted).

Lucas v. Sec'y, Dep't of Corr., 682 F.3d 1342, 1351-52 (11th Cir. 2012), cert. denied, 568 U.S. 1104 (2013).

On direct appeal, Petitioner failed to reference the federal source of law or any case deciding the claim on federal grounds, and he did not label the claim as federal.  Thus, Petitioner never

---

4 Kelley v. Sec'y for the Dep't of Corr., 377 F.3d 1317 (11th Cir. 2004), cert. denied, 545 U.S. 1149 (2005).

gave the state court a meaningful opportunity to address either a Sixth Amendment or Fourteenth Amendment federal constitutional claim.

After a thorough review of the record before the Court, the Court concludes Petitioner failed to exhaust a Sixth Amendment or Fourteenth Amendment claim in the state courts.  It is clear from state law that any future attempts at exhaustion of this ground would be futile.  As such, Petitioner has procedurally defaulted this ground for relief.  Petitioner has failed to show cause and prejudice or that a fundamental miscarriage of justice will result if the Court does not reach the merits of ground one. Consequently, ground one is due to be denied.

In its response to the Petition, the state urges this Court to find Petitioner fails to allege a violation of constitutional dimension, but instead raises a state law claim of fundamental error under Florida law.  Response at 19-20.  To the extent Petitioner is claiming the jury instructions amount to fundamental error, he presents an issue of state law.  Even if the instructions were erroneous under Florida law, "it is not the province of a federal habeas court to reexamine state-court determination on state-law questions."  Estelle v. McGuire, 502 U.S. 62, 67 (1991). Error, if any, did not rise to the level of a due process

violation. [5]   Moreover, the 1st DCA addressed Petitioner's contention that the 1st DCA should find error in Florida's standard jury instruction on principals, and in affirming with an opinion, the 1st DCA found Petitioner failed to establish fundamental error and denied relief.  (Doc. 19-4 at 39-40).

As noted by Respondents, Florida's interpretation of its own jury instructions is not subject to federal habeas review. Therefore, in an alternative ruling, the Court finds Petitioner's claim that the jury instruction on principals was fundamentally erroneous is not cognizable in this proceeding and ground one is due to be denied.

**GROUND TWO:  The jury's verdict was ambiguous and must be construed to reject the claim that Petitioner actually or personally carried a firearm during the commission of the offense.**

Petitioner raised this claim in Issue II of his direct appeal. (Doc. 19-3 at 271-79).  Respondents assert this is not a cognizable federal claim.  Response at 22-23.  Indeed, it is quite apparent Petitioner presented a state law claim in ground two.  Id. at 23-24.  This Court should refrain from addressing state law claims. It is not the province of this Court to reexamine a state-court

---

5 "Cases in [the United States Supreme Court] have long proceeded on the premise that the Due Process Clause guarantees the fundamental elements of fairness in a criminal trial." Spencer v. State of Tex., 385 U.S. 554, 563-64 (1967).

determination on issues of state law.  Estelle.  As there has been no breach of a federal constitutional mandate, this Court is bound by the Florida court's decision.  Petitioner is not entitled to habeas relief on ground two.  Ross v. McDonough, No. 5:08-cv-188-MCR-AK, 2008 WL 2704502, at *5 (N.D. Fla. July 3, 2008) (finding no constitutional basis for the claim that the verdict was ambiguous and recognizing the state court's findings highlight the state law nature of the claim).

**GROUND THREE:  The Prison Releasee Reoffender statute violates Apprendi and Alleyne.**

In this ground, Petitioner claims the Prison Releasee Reoffender (PRR) statute violates Apprendi[6] and Alleyne[7] as it requires the trial court to make a number of factual findings, findings which, Petitioner asserts, should be submitted to a jury pursuant to Supreme Court law.  Petition at 9.  In his supporting facts, Petitioner contends the trial court erred in its failure to submit the PRR predicate findings to a jury.  Id.

Petitioner raised a comparable claim in ground one of his Rule 3.800(b)(2) motion to correct sentencing error (Doc. 19-3 at 213-28).  The trial court, in its Order Denying Defendant's Motion

---

6 Apprendi v. New Jersey, 530 U.S. 466 (2000).

7 Alleyne v. United States, 133 S. Ct. 2151 (2013).

14

to Correct Sentencing Error, denied this claim on its merits.  <u>Id</u>.
at 229-32.  The court initially found Petitioner was convicted and
sentenced for armed robbery ("Foremost, Defendant was convicted
and sentenced for armed robbery.").  <u>Id</u>. at 230.  The court then
explained its reasoning for denying relief:

> In the instant case, the trial judge
> imposed a mandatory minimum term of life upon
> Defendant solely based on Defendant's status
> as a recidivist felon.  The Florida Supreme
> Court has held that the sentencing enhancement
> scheme found in the PRR Act, under which
> Defendant received his life mandatory minimum
> sentence, is unaffected by <u>Apprendi</u>.  <u>Gudinas</u>
> <u>v. State</u>, 879 So. 2d 616, 618 (Fla. 2004)
> (holding that Florida's PRR statute is not
> invalidated by <u>Apprendi</u>); <u>see</u> <u>Robinson v.</u>
> <u>State</u>, 793 So. 2d 891, 893 (Fla. 2001).
> Likewise, <u>Alleyne</u> does not affect the validity
> of the PRR statute, and Defendant's PRR
> sentence is unaffected.  <u>See</u> <u>Swatzie</u>, 2013 WL
> 5566488, at *1.

> Moreover, "'proof to the jury of a
> defendant's release which subjects a defendant
> to a sentence under the [PRR] Act is not
> required.'"  <u>Gudinas</u>, 879 So. 2d at 618
> (quoting <u>Robinson</u>, 793 So. 2d at 893).  For
> the PRR mandatory sentencing to be imposed,
> the State is required by statute to prove a
> defendant is a PRR by a preponderance of
> evidence.  § 775.082(9)(a)3; <u>see</u> <u>Ellington v.</u>
> <u>State</u>, 96 So. 3d 1131, 1131 (Fla. 1st DCA 2012)
> ("It is well-settled that, once the State
> proves by a preponderance of the evidence that
> a defendant qualifies as a prison releasee
> reoffender, the trial court must sentence the
> defendant in accordance with the provisions of
> section 775.082(9), Florida Statutes.").  The
> court's decision in <u>Alleyne</u> did not change the

> standard of proof required for a PRR
> designation. <u>See</u> <u>Chester v. Warden</u>, No. 12-
> 15119, 2014 WL 104150, at *4 (11th Cir. Jan.
> 13, 2014) (reiterating that "recidivism is *not*
> an element of an offense that must be proved
> to a jury beyond a reasonable doubt").

(Doc. 19-3 at 231-32).  In its conclusion, the court found:

> Conclusively, as of the date of this
> Order, neither the Florida Supreme Court nor
> the United States Supreme Court has determined
> that Florida's recidivist statutes, sections
> 775.082 and 775.084, are unconstitutional as
> applied to mandatory minimum punishments.
> The Court, therefore, finds that <u>Alleyne</u> is
> inapplicable to the instant case and declines
> to overturn Defendant's PRR portion of his
> sentence.  Thus, Defendant's argument in this
> construed ground for relief is without merit
> and is denied.

(Doc. 19-3 at 232).

Petitioner also raised a similar claim in Issue III of his direct appeal (Doc. 19-3 at 248, 279-83).  The First District Court of Appeal (1st DCA) affirmed.  (Doc. 19-4 at 39-40).

The record demonstrates the following.  The state filed a Notice of Intent to Classify Defendant as a Prison Release Re-Offender, announcing the state's intent to rely on Petitioner's prior conviction and sentence (Duval County) for Driving While License Suspended or Revoked as a Habitual Traffic Offender on May 4, 2009, and stating Petitioner was released from incarceration within three years of the date of the commission of the newly

charged crimes.   (Doc. 19-1 at 37).   At sentencing, on July 9, 2013, the state apprised the trial court that the state had filed a PRR notice.   (Doc. 19-2 at 107).   In its sentencing decision, the court referenced the exhibits, prior judgments and sentences, including one for possession of cocaine and driving while license suspended or revoked from 2009.   <u>Id</u>. at 107.   The court noted the state had also provided the court with a record from the Florida Department of Corrections showing Petitioner's most recent release date of April 15, 2010.   <u>Id</u>. at 107-108.   The defense announced it would not present any argument as the sentence the court "must impose is mandatory[.]" <u>Id</u>. at 114.   The state also said it would not present argument as "[m]andatory life is the only sentence available to the Court."   <u>Id</u>. at 115.   The court, recognizing Petitioner had been convicted by a jury of armed robbery and finding that based upon the documentation introduced by the state that Petitioner is a PRR recently released from prison on April 15, 2010 with a new crime date of February 1, 2012, sentenced Petitioner to life as a PRR.   <u>Id</u>. at 116.   The court entered judgment and sentence on July 9, 2013.   <u>Id</u>. at 45-51.   The sentence reflects Petitioner is a PRR sentenced to life in prison.   <u>Id</u>. at 48-51.

17

Respondents assert Petitioner cannot establish the trial court's decision denying this claim for relief was contrary to or in violation of federal constitutional law. Response at 32. The record demonstrates the trial court relied on the records submitted to the court. Moncus v. State, 69 So. 3d 341, 343 (Fla. 4th DCA 2011) (certified copies and official court records required for enhancement purposes); Slade v. State, 898 So. 2d 120 (Fla. 4th DCA 2005) (per curiam) (affirming reliance on record evidence of certified copies of convictions and court files to support finding of habitual offender status). The state court's decision rejecting Petitioner's claim is supported by the record and the law.

To the extent Petitioner is claiming he did not get fair notice, the record shows otherwise. The state filed the required notice. Not only did the court receive evidence of Petitioner's prior conviction, it also received evidence that Petitioner was released from prison within three years of the date of the offense (armed robbery) for which he was convicted.

As noted by Respondents, Response at 33, as the Supreme Court refused to re-address Almendarez-Torres v. United States, 523 U.S. 224 (1998), it is still the governing law;[8] therefore, Petitioner's

---

8 Although there is a risk that Almendarez-Torres may be overruled

18

sentence, based on his prior felony conviction and his release date from prison, will not be revisited by this Court.  <u>United States v. Boatley</u>, 551 F. App'x 535, 536 (11th Cir.) (per curiam), <u>cert. denied</u>, 572 U.S. 1040 (2014).  <u>See</u> <u>United States v. Harris</u>, 741 F.3d 1245, 1250 (11th Cir. 2014) (recognizing the tension between <u>Almendarez-Torres</u> and <u>Alleyne</u> and <u>Apprendi</u>, but acknowledging the court is bound to follow <u>Almendarez-Torres</u>).  As explained in <u>Williams v. State</u>, 143 So. 3d 423, 424 (Fla. 1st DCA 2014),

> "The touchstone for determining whether a fact must be found by a jury beyond a reasonable doubt is whether the fact constitutes an 'element' or 'ingredient' of the charged offense." <u>Alleyne</u>, ––– U.S. at ––––, 133 S. Ct. at 2158 (emphasis added). The key fact pertinent to PRR sentencing—whether the defendant committed the charged offense within three years of release from prison—is not an ingredient of the charged offense. Rather, it relates to the fact of a prior conviction.
>
> Accordingly, we hold that <u>Alleyne</u> does not require a jury to make the PRR factual determination. <u>See</u> <u>Lopez v. State</u>, 135 So.3d 539 (Fla. 2d DCA 2014).

This Court and other federal courts have reached similar conclusions, finding comparable state court adjudications

---

at some point, to date, it is still governing law.  Thus, this Court is bound by <u>Almendarez-Torres</u>.

concerning denial of relief on claims asserting a jury did not find the date of release from custody not to be contrary to or an unreasonable application of federal law. McGriff v. Sec'y, Dep't of Corr., No. 3:15-cv-1281-J-39JBT, 2018 WL 354956, at *6 (M.D. Fla. Jan. 10, 2018) ("the fact that Petitioner committed his offenses within three years of being released from the FDOC is analogous to the fact of a prior conviction as it demonstrates recidivism"); Hackley v. Inch, No. 4:17-cv435-WS/CAS, 2019 WL 1548583, at *15 (N.D. Fla. Jan. 28, 2019) (the fact of release from custody is subsumed within the prior conviction exception in Apprendi), report and recommendation adopted by 2019 WL 1548575 (N.D. Fla. April 9, 2019).

Moreover, error, if any, would have been subject to harmless error analysis as failure to submit a sentencing factor to the jury is a non-structural error. Washington v. Recuenco, 548 U.S. 212, 218-19 (2006). See United States v. King, 751 F.3d 1268, 1279 (11th Cir.) (Apprendi-type errors and extensions of Apprendi are subject to harmless error review), cert. denied, 574 U.S. 946 (2014). As such, in affirming, even if the 1st DCA, *sub silentio*, agreed that a jury should have made the finding, the error would have been subject to harmless error analysis and denial on that ground would have not been an unreasonable application of any

20

federal law.  "Because we review errors under <u>Apprendi</u> and its progeny [including <u>Alleyne</u>] for harmless error," these types of errors are subject to harmless error review.  <u>King</u>, 751 F.3d at 1279.  Thus, ground three is due to be denied.

Petitioner is not entitled to relief on this ground because the state court's decision was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts based on the evidence presented in the state court proceedings.  Therefore, ground three is due to be denied.  The Court concludes AEDPA deference is due and Petitioner is not entitled to federal habeas relief.

**GROUND FOUR:  Ineffective assistance of trial counsel for failure to object to and preserve for appellate review the erroneous jury instruction on principals.**

In this ground, Petitioner asserts his trial counsel was ineffective for failure to object to the trial court's instruction that permitted the jury to find Petitioner guilty of armed robbery under the principal theory without the jury having to consider whether or not Petitioner knew in advance that a co-defendant would use a firearm.  Petition at 11.  He raised a comparable claim in ground one of his Rule 3.850 motion.  (Doc. 19-4 at 65-69).  The circuit court rejected this claim finding the issue had previously

been raised and addressed on direct appeal and concluding Petitioner may not relitigate procedurally barred claims by couching the claims in terms of ineffective assistance of counsel. Id. at 88-89.  The 1st DCA affirmed per curiam.  Id. at 151.

On direct appeal, after noting there was no objection below to the standard jury instruction on principals, the 1st DCA opined Petitioner did not establish fundamental error and declined to reach the issue raised on appeal.  Id. at 39-40.  In his appeal brief, Petitioner asked the 1st DCA to apply the reasoning of Rosemond v. United States, 572 U.S. 65 (2014) to find error in the standard instruction because it allowed a defendant to be convicted as a principal for robbery with the use of a firearm based upon evidence that he intended that the robbery be committed without requiring any showing that the defendant intended that a firearm be used.

In their Response at 44, Respondents contend, "[b]ecause the Court found no fundamental error, [the defendant] fails to demonstrate that counsel's failure to object to the comments resulted in prejudice sufficient to undermine the outcome of the trial under Strickland."  Lowe v. State, 2 So.3d 21, 38 (Fla. 2008) (per curiam).  See Clarke v. State, 102 So. 3d 763, 764-65 (Fla. 2012) (per curiam) (the affirmance with opinion reveals the

22

court found no fundamental error occurred, as such, the defendant fails to demonstrate counsel's failure resulted in prejudice sufficient for Strickland purposes); Braddy v. State, 219 So. 3d 803, 823 (Fla. 2017) (per curiam) (same, finding counsel's failure insufficient to undermine the outcome of the trial under Strickland).

In this instance, the Florida court, the 1st DCA, determined the alleged error was not shown to be fundamental; therefore, this Court "must defer to the 'Florida court's underlying determinations of state law.'" Pinkney v. Sec'y, DOC, 876 F.3d 1290, 1297-98 (11th Cir. 2017), cert. denied, 139 S. Ct. 193 (2018). Thus, even if the giving of the challenged instruction was error, it was not fundamental error. Therefore, Petitioner has failed to demonstrate any failure on counsel's part to object to the standard instruction resulted in prejudice sufficient for Strickland purposes. As such, Petitioner cannot prevail on his claim of ineffective assistance of counsel since he has failed to satisfy one of the Strickland prongs: the prejudice prong. Brewster, 913 F. 3d at 1056 (reviewing court may begin with either component).

The Court is also not convinced Petitioner has shown his counsel performed deficiently by failing to object to the

23

instruction that permitted the jury to find Petitioner guilty of armed robbery under the principal theory without the jury having to consider whether or not Petitioner knew in advance that a co-defendant would use a firearm.  The trial record demonstrates the state proved facts sufficient to support a principal instruction. Consequently, counsel was not ineffective for failure to make an objection to the Florida standard principal instruction.  Under Strickland, the standard is reasonable performance, not perfection.  Brewster, 913 F.3d at 1056 (citation omitted). Counsel's actions were well within the scope of permissible performance.  This is particularly so since the decision in Rosemond, 572 U.S. at 67, upon which Petitioner relies for his argument that trial counsel performed deficiently for failure to object to the standard jury instruction, was not rendered until March 5, 2014, long after Petitioner was convicted and sentenced on July 9, 2013.  (Doc. 19-2 at 45-51.  Trial counsel are not expected to predict the future to be considered effective counsel. Indeed, "[d]efense counsel is competent if he acts upon the law as it exists at the time of the trial, and has no duty to predict the future."  Byrd v. McNeil, No. 3:06-cv-1115-J-33HTS, 2008 WL 2025316, at *14 (M.D. Fla. May 9, 2008) (citation omitted) (finding sufficient proof for the state to argue either theory of guilt and

the case the petitioner relied upon to assert otherwise was decided after the trial and counsel had no duty to predict the future).

In conclusion, the Court is not convinced defense counsel's performance fell below an objective standard of reasonableness through failure to object to the standard jury instruction. Thus, Petitioner has not satisfied the performance prong of Strickland. Without satisfying the performance prong of Strickland, Petitioner cannot prevail on his claim of ineffective assistance of counsel. Ground four is due to be denied and Petitioner is not entitled to habeas relief on this ground.

**GROUND FIVE:  The ineffective assistance of counsel for failure to move to set aside general verdict.**

In the supporting facts for this ground, Petitioner states the jury was presented with alternative theories under which it could convict Petitioner of armed robbery, the first being based on evidence presented from the testimony of two co-defendants, and the second being based on the theory that Petitioner was guilty under the principal theory. Petition at 14. Petitioner states the jury returned a general verdict after being instructed on alternate theories upon which to convict Petitioner. Id. Petitioner complains it is impossible to determine which theory the jury relied upon to find Petitioner guilty of armed robbery. Id. He further alleges that the jury did not find that he actually

possessed a deadly weapon because the standard principal instruction given by the court was not in keeping with the ruling in Rosemond. Id. In essence, Petitioner claims this erroneous instruction allowed the jury to find him guilty of armed robbery upon a legally inadequate theory, and due to the general verdict, there is no way of knowing which theory the jury relied upon to convict Petitioner.

Petitioner raised a comparable claim in ground two of his Rule 3.850 motion. (Doc. 19-4 at 69-78). The trial court denied the claim finding the underlying issue had been rejected on appeal. Id. at 89. Petitioner appealed the denial of his Rule 3.850 motion and the 1st DCA affirmed per curiam. Id. at 151.

The record demonstrates, on direct appeal, Petitioner raised the following in Issue II of his appeal brief: "[t]he trial court erred in sentencing appellant for armed robbery; the jury's verdict was ambiguous and must be construed to reject the claim that appellant actually or personally carried a firearm during the commission of the offense." (Doc. 19-3 at 248). The 1st DCA, in a written opinion, affirmed each issue raised on appeal. (Doc. 19-4 at 39-40).

As he did in ground four of the federal Petition, Petitioner predicates ground five on the theory that Florida's standard

principal instruction is fundamentally erroneous. The 1st DCA found Petitioner failed to establish that fact. As noted previously, the decision in Rosemond came down after Petitioner was convicted. Trial counsel was not ineffective for failure to predict the ruling in Rosemond and for failure to move to set aside the general verdict based on the reasoning set forth in Rosemond. See Cochran v. Frazier, 377 F. App'x 870, 872 (11th Cir. 2010) (per curiam) (trial counsel found not ineffective for failure to predict a holding); United States v. Andrews, No. CR94cr62-MHT, 2010 WL 1252415, at *2 (M.D. Ala. Feb. 22, 2010) ("as a matter of law in this circuit, counsel cannot be ineffective for failing in 1994 to predict what the Supreme Court would hold in 1999), report and recommendation adopted by 2010 WL 1252433 (Mar. 25, 2010).

Petitioner's counsel was not ineffective for failure to move to set aside the verdict based upon a claim of a legally inadequate principal theory and a general verdict allowing a conviction based upon this allegedly inadequate theory. As previously noted, Rosemond did not come down until Petitioner's case was on appeal; therefore, trial counsel was not obliged to predict the future during the course of the trial.

The record reveals the trial court instructed the jury on robbery, robbery with a deadly weapon, and principals. (Doc. 19-

27

1 at 117-119).  In pertinent part, the court charged the jury with Florida's standard instruction on principals:

> If the defendant helped another person or persons commit a crime, the defendant is a principal and must be treated as if he had done all the things the other person or persons did if:
>
> 1.   The defendant had a conscious intent that the criminal act be done and
>
> 2.   The defendant did some act or said some word which was intended to and which did incite, cause, encourage, assist, or advise the other person or persons to actually commit the crime.
>
> To be a principal, the defendant does not have to be present when the crime is committed.

Id. at 119.

The record shows the jury returned a verdict finding Petitioner guilty of robbery, as charged in the information.[9]  Id. at 113.  The jury further found: "the Defendant carried, displayed, or used a deadly weapon."  Id.

In Vilme v. McNeil, No. 08-23138-CIV, 2010 WL 430762, at *18 n.17 (S.D. Fla. Feb. 5, 2010), the federal district court explained:

---

9 The information for armed robbery charged that Petitioner, "with the intent to permanently or temporarily deprive James Russell of the money or other property, and in the course of committing said robbery, carried a deadly weapon[.]" (Doc. 19-1 at 23).

> Florida law is clear that a person may be convicted of a criminal offense if he aided and abetted its principals. See Fla. Stat. § 777.011 (aider or abettor may be convicted as principal even if not actually or constructively present at commission of offense); Voto v. State, 509 So. 2d 1291, 1292-93 (Fla. 4 DCA 1987); Ramirez v. State, 371 So. 2d 1063, 1065 (Fla. 3 DCA), cert. denied, 383 So. 2d 1201 (Fla. 1980). Thus, a person who participates in a crime is responsible for the acts of his accomplices, as long as the crime committed by the accomplice is within the participants' common design. Parker v. State, 458 So. 2d 750 (Fla. 1984), cert. denied, 470 U.S. 1088, 105 S. Ct. 1855, 85 L.Ed.2d 152 (1985). See also Jacobs v. State, 396 So. 2d 713, 717 (Fla. 1981) ("One who participates with another in a common criminal scheme is guilty of all crimes committed in furtherance of that scheme regardless of whether he or she physically participates in that crime.")

There was adequate evidentiary support for both theories of guilt. Assuming *arguendo* an Alleyne error occurred, it is harmless (subject to a harmless error analysis). After reviewing the entire record, based on the evidence presented in this case and the jury's findings, any error was harmless beyond a reasonable doubt. See Brown v. State, 277 So. 3d 616, 620-23 (Fla. 3rd DCA Nov. 28, 2018) (the jury found the defendant guilty of first degree murder, attempted armed robbery, and the offenses were committed with a firearm that he used).

At trial, Petitioner's co-defendant, Michael Hall, testified Petitioner was the driver of the car.  (Doc. 19-2 at 329).  Hall attested both he and Petitioner went into the Chevron Station to purchase items.  Id.  Hall said when Petitioner returned to the vehicle, Petitioner mentioned seeing a customer "with stuff[:]" a lot of money.  Id. at 333.

Hall then testified to the following.  Petitioner and his co-defendants waited in the vehicle for the customer to come out of the store.  Id. at 334.  After the customer came out of the store, with Petitioner driving, the perpetrators followed the victim home and stopped in front of the victim's driveway.  Id. at 334-35.  At that point, Petitioner and one of his sons, Larry Jossey, III (Jossey), jumped out of the car.  Id. at 335.  When Petitioner got out of the car, Hall saw a gun in the bottom of Petitioner's jacket and Hall watched Petitioner pull the gun out.  Id.  Petitioner and Jossey walked up to the victim and grabbed him, then Jossey jumped in the victim's car and drove off.  Id. at 336.  Petitioner ran back to the car he had been driving, returned to the driver's seat, and drove off.  Id.  Mr. Hall saw that Petitioner had the victim's wallet.  Id.  Petitioner drove back to the gas station and "crashed the car."  Id.  Petitioner was driving the entire time. Id.  Upon returning to Petitioner's house, all of the perpetrators

searched the victim's car, which was now at Petitioner's house, for money, jewelry, or anything left in the car.  Id. at 340-41. Hall testified the gun Petitioner wielded was a .380 and Hall had seen Petitioner with the gun numerous times before.  Id. at 357.

Another co-defendant, Jossey, testified at trial as well. Id. at 382.  He testified as follows.  Petitioner invited Jossey to Petitioner's house because he "was going to go make some money." Id. at 385.  Petitioner got in the driver's seat of Jossey's stolen car.  Id. at 386.  Jossey rode in the front passenger seat.  Id. Jossey's brother was sitting behind Jossey in the rear seat.  Id. Hall was sitting behind Petitioner in the other rear seat of the car.  Id.  At the Chevron Station, Petitioner and Hall got out of the car and went into the store.  Id. at 388.  A conversation followed that a man getting inside of his car at the store had money.  Id. at 388.  Petitioner announced he was going to follow the man.  Id. at 389.

Petitioner was driving.  Id.  Petitioner followed the victim, and when the victim pulled inside his driveway, Petitioner parked in front of the victim's house and turned to Jossey and said "[c]ome with me[.]" Id. at 390.  Jossey did not see Petitioner with a gun until Petitioner got out of the car.  Id.  Jossey attested he saw Petitioner with a .38.  Id.  Petitioner approached

the victim and asked him for his money and the keys to his car.
Id. at 390-91.  Jossey had the victim start the car and then Jossey
drove off in the victim's car.  Id. at 391.  Petitioner returned
to the car he had been driving and drove off.  Id.  Jossey followed
Petitioner.  Id.  The car Petitioner was driving broke down, and
Jossey kept going in the victim's car until Jossey arrived at his
father's house.  Id. at 392.  Once all of them returned back to
the house, they all searched the victim's car.  Id.  They found
money in the victim's car.  Id.  Petitioner retrieved money from
both the victim and the victim's car.  Id. at 392-93.

Petitioner, in a recorded statement to the police played for
the jury, admitted to driving the car to the scene but said he did
not know anything.  Id. at 445.  Petitioner also said: "Me and
[Petitioner's minor son] have a gun."  (Doc. 91-3 at 1).
Detective Potter testified, after obtaining a search warrant, the
police found a .380 caliber shell casing in the vehicle Petitioner
was driving.  (Doc. 19-3 at 4).

Considering the evidence presented at trial, assuming
arguendo an Alleyne error occurred and applying harmless error
analysis, any error was harmless.  Petitioner is not entitled to
habeas relief on ground five.

**GROUND SIX:  The cumulative error of counsel deprived Petitioner
of his right to a fair trial.**

Petitioner raised a comparable claim in ground three of his Rule 3.850 motion.  (Doc. 19-4 at 79-80).  The trial court denied post-conviction relief, finding the alleged errors are either procedurally barred or without merit, consequently, the claim of cumulative error necessarily fails.  Id. at 89.  The 1st DCA affirmed.  Id. at 151.

To the extent Petitioner is claiming trial counsel's errors deprived Petitioner of a fair trial in violation of the Fourteenth Amendment's Due Process Clause, the Court concludes he is not entitled to habeas relief.  Through his Petition, Petitioner has not shown he was deprived of a fair trial:

> [he] has not demonstrated error by trial counsel; thus, by definition, [Petitioner] has not demonstrated that cumulative error of counsel deprived him of a fair trial.  See Yohey v. Collins, 985 F.2d 222, 229 (5th Cir. 1993) (explaining that because certain errors were not of constitutional dimension and others were meritless, petitioner "has presented nothing to cumulate").

Miller v. Johnson, 200 F.3d 274, 286 n.6 (5th Cir.), cert. denied, 531 U.S. 849 (2000).

In considering a claim of cumulative error when addressing an ineffective assistance of trial counsel contention, under the cumulative error doctrine, the district court considers whether:

33

> "an aggregation of non-reversible errors
> (i.e., plain errors failing to necessitate
> reversal and harmless errors) can yield a
> denial of the constitutional right to a fair
> trial, which calls for reversal." United
> States v. Baker, 432 F.3d 1189, 1223 (11th
> Cir. 2005) (internal quotation marks omitted).
> We address claims of cumulative error by first
> considering the validity of each claim
> individually, and then examining any errors
> that we find in the aggregate and in light of
> the trial as a whole to determine whether the
> appellant was afforded a fundamentally fair
> trial. See United States v. Calderon, 127 F.3d
> 1314, 1333 (11th Cir. 1997).

Morris v. Sec'y, Dept. of Corr., 677 F.3d 1117, 1132 (11th Cir.

2012).  In Forrest v. Fla. Dep't of Corr., 342 F. App'x 560, 564

(11th Cir. 2009) (per curiam) (citing United States v. Cronic, 466

U.S. 648, 659 n.26 (1984)), cert. denied, 562 U.S. 589 (2010), the

Eleventh Circuit explained, although the Supreme Court has not

specifically addressed the applicability of the cumulative error

doctrine when addressing an ineffective assistance of trial

counsel claim, it has held there is no basis for finding a

constitutional violation unless the petitioner can point to

specific errors of counsel which undermined the reliability of the

finding of guilt.  Thus, a cumulative errors of counsel claim

lacks merit without a showing of specific errors of counsel which

undermine the conviction in their cumulative effect, amounting to

prejudice.

34

In his Petition, Petitioner has not demonstrated any of his trial counsel's alleged errors, considered alone, rise to the level of ineffective assistance of counsel; therefore, there are no errors to accumulate, and Petitioner is not entitled to habeas relief.  See Spears v. Mullin, 343 F.3d 1215, 1251 (10th Cir. 2003) (when the sum of various zeroes remains zero, the claim of prejudicial effect of cumulative errors is nil and does not support habeas relief), cert. denied, 541 U.S. 909 (2004).  As the threshold standard of Strickland has not been met, Petitioner has failed to demonstrate that his trial was fundamentally unfair and his counsel ineffective.  Simply, Petitioner has not shown specific errors which undermine the conviction in their cumulative effect; therefore, he has failed to demonstrate prejudice.  Even considered cumulatively, his assertions do not render the claim of ineffective assistance of counsel sufficient.  Robertson v. Chase, No. 1:07-CV-0797 RWS, 2011 WL 7629549, at *23 (N.D. Ga. Aug. 12, 2011) (citations omitted), report and recommendation adopted by 2012 WL 1038568 (N.D. Ga. Mar. 26, 2012), aff'd by 506 F. App'x 951 (11th Cir. 2013), cert. denied, 571 U.S. 842 (2013).  As such, Petitioner is not entitled to habeas relief on his claim that cumulative errors of counsel deprived him of a fair trial.

The state court decision passes AEDPA muster as singularly or cumulatively, the proposed deficient conduct does not meet the Strickland standard and Petitioner was not deprived of a fair trial.  As such, Petitioner is not entitled to habeas relief and ground six is due to be denied.

**Ground Seven: The trial court erred in sentencing Petitioner to a minimum mandatory term of life for armed robbery because the PRR statute violates Apprendi and Alleyne.**

Petitioner bases his claim of a violation of Apprendi and Alleyne on (1) the temporal relationship (within 3 years) between the current offense and release from prison being determined by a judge rather than the jury; (2) the lack of extenuating circumstances precluding the just imposition of a PRR sentence being determined by a prosecutor rather than the jury; and, (3) the qualifications for Petitioner to be deemed a PRR were deemed established by a preponderance of the evidence rather than the jury finding the qualifications beyond a reasonable doubt. Petition at 15.  Petitioner exhausted his claim in the state courts by raising it in Issue I of a Rule 3.800(b)(2) motion before the circuit court (Doc. 19-3 at 207-209, 210-18) and by presenting the claim on direct appeal in issue III of his brief (Doc. 19-3 at 246-48, 279-83).  The 1st DCA affirmed Petitioner's conviction and

sentence on direct appeal in a written opinion.  (Doc. 19-4 at 39-40).

In denying the Rule 3.800(b)(2) motion, the circuit court found Petitioner had been convicted and sentenced for armed robbery.  (Doc. 19-3 at 230).  The court reasoned that <u>Alleyne</u> simply expanded the holding in <u>Apprendi</u>, applying the rule announced in <u>Apprendi</u> to mandatory minimum sentences.  (Doc. 19-3 at 230).  The court further explained that <u>Alleyne</u> extended the holding in <u>Apprendi</u> to any fact, other than a prior conviction, that increases the minimum mandatory term.  <u>Id</u>. at 230-31.  As such, the court concluded that the sentencing enhancement scheme set forth in the PRR Act unaffected by <u>Apprendi</u> and <u>Alleyne</u>, specifically finding that the date of a defendant's release from prison does not have to be submitted to a jury for determination and <u>Alleyne</u> does not change the standard of proof required for PRR designation allowing for proof by a preponderance of evidence. <u>Id</u>. at 231-32.

After providing its reasoning, the court held:

> Conclusively, as of the date of this Order, neither the Florida Supreme Court nor the United States Supreme Court has determined that Florida's recidivist statutes, sections 775.082 and 775.084, are unconstitutional as applied to mandatory minimum punishments. The Court, therefore, finds that <u>Alleyne</u> is inapplicable to the instant case and declines

> to overturn Defendant's PRR portion of his
> sentence.  Thus, Defendant's argument in this
> construed ground for relief is without merit
> and is denied.

(Doc. 19-3 at 232).

For the same reasons provided in denying ground three of the Petition, Petitioner is not entitled to habeas relief on ground seven.  The Supreme Court has not revisited Almendarez-Torres; therefore, it is the governing law in this case.  Chester v. Warden, 552 F. App'x 887, 891 (11th Cir. 2014) (per curiam).  The Court finds AEDPA deference is due; the Florida court's decision is not inconsistent with Supreme Court precedent, and the state court's adjudication of the claim is not contrary to or an unreasonable application of Supreme Court law or based on an unreasonable determination of the facts.  Thus, ground seven of the Petition is due to be denied.

**Ground Eight: "Appellant's score sheet is incorrect because he was actually convicted of armed robbery; the jury's verdict supports only a sentencing for simple robbery."**

Petitioner, in his supporting facts, argues "the jury's verdict does not support a finding of actual possession because the jury was instructed on the principle [sic] theory of prosecution."  Petition at 15.  Petitioner exhausted this ground in the state court system by presenting it in his Rule 3.800(b)(2)

38

motion (Doc. 19-3 at 218-27) in Issue II.   The circuit court rejected this claim.   Id. at 232-33.   Upon review of the record, the court concluded the jury found Petitioner guilty of robbery as charged in the information, and additionally, guilty of carrying, displaying, or using a deadly weapon.   Id.   The court additionally noted Petitioner's scoresheet reflected scores for armed robbery, resulting in a sentencing range of thirty-four and a half months to a maximum of life.   Id. at 233.   Notably, the court concluded the scoresheet made no difference because Petitioner was sentenced as a PRR, as shown on the scoresheet.   Id.   As such, the court denied relief finding Petitioner's claim without merit.   Id.   As a PRR offender, Petitioner was "not eligible to be sentenced under the sentencing guidelines" and was sentenced to life in prison as a PRR.   Id. at 232 (citing Dolansky v. State, 964 So. 2d 188 (Fla. 1st DCA 2007) (per curiam)).

Upon review, the Criminal Punishment Code Scoresheet shows Petitioner's offense level as 8 for armed robbery with a score of 74 points.   (Doc. 19-2 at 52-53).   The sentence computation is 34.5 months to life.   Id. at 53.   The total sentence imposed is life in prison as a PRR.   Id.

Petitioner raised a comparable claim in Issue II of his direct appeal brief.  (Doc. 19-3 at 271-79).  The 1st DCA affirmed in a written opinion.  (Doc. 19-4 at 39-40).

Apparently, Petitioner is reiterating the claim that his conviction and sentence are in violation of Apprendi and Alleyne. As previously stated in the review of grounds three and seven of the Petition, Florida's PRR statute is not invalidated by Apprendi nor circumscribed by Alleyne.  Thus, Petitioner is not entitled to habeas relief.

To the extent the state court reached a claim of constitutional dimension, the state court's ruling is entitled to AEDPA deference.  The state court's adjudication of the claim is not contrary to or an unreasonable application of clearly established Supreme Court law and it is not based on an unreasonable determination of the facts in light of the record. Thus, ground eight is due to be denied.

Accordingly, it is now

**ORDERED AND ADJUDGED:**

1.   The Petition for Writ of Habeas Corpus (Doc. 1) is **DENIED.**

2.   This action is **DISMISSED WITH PREJUDICE.**

3.   The **Clerk** shall enter judgment accordingly and close this case.

4.   If Petitioner appeals the denial of his Petition for Writ of Habeas Corpus (Doc. 1), **the Court denies a certificate of appealability**. [10]   Because this Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case.   Such termination shall serve as a denial of the motion.

**DONE AND ORDERED** at Jacksonville, Florida, this 14th day of May, 2020.

BRIAN J. DAVIS
United States District Judge

---

[10] This Court should issue a certificate of appealability only if a petitioner makes "a substantial showing of the denial of a constitutional right."   28 U.S.C. § 2253(c)(2).   To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).   Upon due consideration, this Court will deny a certificate of appealability.

sa 5/12
c:
Larry G. Jossey, Jr.
Counsel of Record